[Cite as *State v. Laudermilk*, 2022-Ohio-659.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

ROBERT W. LAUDERMILK,

        Defendant-Appellant.

CASE NO. 2021-P-0054

Criminal Appeal from the
Municipal Court, Ravenna Division

Trial Court No. 2021 CRB 00625 R

---

# **O P I N I O N**

Decided: March 7, 2022
Judgment: Affirmed

---

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Robert W. Laudermilk*, pro se, 8564 Freedom Road, Windham, OH 44288 (Defendant-Appellant).


MARY JANE TRAPP, J.

{¶1} Appellant, Robert W. Laudermilk ("Mr. Laudermilk"), pro se, appeals the judgment entry of the Portage County Municipal Court, Ravenna Division, which ordered restitution to the victim following a plea negotiation that dismissed two counts of domestic violence in two separate cases for two separate incidents involving the same victim in exchange for his plea of no contest to one count of criminal damaging, a second-degree misdemeanor. Mr. Laudermilk agreed to submit to a diagnostic assessment, follow its recommendations, and pay a fine, court costs, and restitution for the second incident.

{¶2}    Mr. Laudermilk raises six assignments of error on appeal, specifically contending that: (1) the charge of criminal damaging erroneously listed "damage to property of [victim]" and not the victim's person; (2) the court ordered restitution "to be handled" by the Portage County Adult Probation Department ("APD") and instead held a restitution hearing; (3) the victim did not cooperate with the prosecutor, victim advocate, or the APD; (4) the victim already agreed to pay any credit card or any other debt in the separation agreement between Mr. Laudermilk and the victim; (5) defense counsel was ineffective for failing to adequately cross-examine the victim at the restitution hearing; and (6) he was already responsible for the funds in the accounts the victim used to pay for the medical bills.

{¶3}    At the outset, we note that despite having his first filed brief stricken for failure to comply with the state and local appellate rules and after having been directed to those rules and the sample brief within our local rules, Mr. Laudermilk failed to cite to the record or provide this court with any legal authority for his assignments of error.  His second filed brief also failed to meet several other requirements for an appellant's brief pursuant to App.R. 16.

{¶4}    Although we may dismiss his appeal on this basis, in the interest of justice, we reviewed his assigned errors, and, from what we can construe, our review reveals they are without merit.

{¶5}    Firstly, Mr. Laudermilk agreed during plea negotiations that in exchange for the dismissal of two domestic violence cases, both first-degree misdemeanors, he would plead no contest to one count of criminal damaging to property, a second-degree

2

misdemeanor, and among other stipulations, pay restitution for the victim's expenses resulting from the physical harm she suffered in one of the incidents.

{¶6} Secondly, prior to the court determining the amount of restitution, it properly ordered the APD to preliminarily determine whether restitution was owed in light of the unusual circumstances, i.e., at the time of the offense the victim was married to Mr. Laudermilk, and it appeared that health insurance may have paid a portion of the victim's medical bills.

{¶7} Thirdly, the trial court's restitution order was supported by competent, credible evidence in the record by way of the victim's medical bills and a credit card statement.

{¶8} Lastly, Mr. Laudermilk failed to establish that his counsel was ineffective; thus, we do not reach the question of whether but for counsel's claimed error, the outcome of the restitution hearing would have been different.

{¶9} The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.

**Substantive and Procedural Facts**

{¶10} Mr. Laudermilk had two pending cases in the Portage County Municipal Court, Ravenna Division, charging him with domestic violence from two separate incidents involving the same victim. In case no. 2020CRB01178, Mr. Laudermilk was charged with one count of domestic violence, a first-degree misdemeanor, in violation of R.C. 2919.25(A), for an incident that occurred on June 27, 2020. In case no. 2020CRB01635, Mr. Laudermilk was charged with one count of domestic violence, a first-

3

degree misdemeanor, in violation of R.C. 2919.25(A), for an incident that occurred on August 29, 2020.

{¶11} At the pretrial for both cases, the parties agreed that the state would dismiss the two pending cases if Mr. Laudermilk pleaded no contest to one count of criminal damaging, a second-degree misdemeanor, in violation of R.C. 2909.06, consented to a diagnostic assessment, followed its recommendations, and paid a fine, court costs, and restitution for the August 29, 2020 incident.

{¶12} Pursuant to the plea agreement and on the same day, the state filed a complaint charging Mr. Laudermilk with one count of criminal damaging or endangering, a second-degree misdemeanor, in violation of R.C. 2909.06. The complaint alleged that Mr. Laudermilk "did knowingly cause or create substantial risk of physical harm to property of [the victim] without her consent." The trial court's Crim.R. 17.1 "Criminal Pre-trial Report" reflected the plea agreement and that the matter would be set for a restitution hearing.

{¶13} On the same day, after reviewing Mr. Laudermilk's rights, the trial court accepted Mr. Laudermilk's plea of no contest to the second-degree misdemeanor and proceeded to sentencing. The state notified the court that because Mr. Laudermilk and the victim were in the midst of a divorce and much of the cost of the victim's injuries were covered by insurance, there was a question as to what amount the victim actually incurred out-of-pocket. The court replied, "Well, let me do this then instead. Thank you for that information. I'm just indicating it's to be determined by Adult Probation, and if it comes back that there is restitution then we'll set it for hearing." The court noted restitution would

4

be imposed, which "will also be determined by the APD," and set the restitution hearing for 60 days.

{¶14} We do not have a transcript of the sentencing portion of that hearing in our record. The sentencing judgment entry states that Mr. Laudermilk was sentenced to 180 days in jail, with 180 days suspended, provided he pay a fine of $250, submit to a diagnostic assessment, and follow all recommendations within 180 days, as well as pay restitution for the August 29, 2020 incident, which was to be determined by the APD. The sentencing entry also noted that the earlier two cases were dismissed.

{¶15} At the restitution hearing, the court informed the parties that it received notice from the APD that the victim indicated she did not have receipts for all of her medical bills, although she did provide some of the medical bills. The victim advocate and the victim were also present at the hearing and presented additional medical bills and a credit card statement. The court explained Mr. Laudermilk's rights regarding a restitution hearing, and it reviewed that the restitution pertained only to the incident on August 29, 2020, and not to the June 27, 2020 incident.

{¶16} Defense counsel agreed with the state that the amount the victim presented was $1,955.19, but objected to the imposition of restitution. Accordingly, and appropriately, the court proceeded with a hearing.

{¶17} The victim testified as to her injuries and expenses, explaining that on the day of the incident, Mr. Laudermilk "got my arm twisted up and pushed into a wall a few times." She suffered from an aggravation of preexisting conditions of her wrist and back. She submitted medical bills, which evidenced uncovered amounts paid out of pocket, and a credit card statement, which reflected that she paid a medical bill of $800.

5

{¶18} On cross-examination, the victim testified that she filed for divorce several days after the date of the incident. Further, she and Mr. Laudermilk separated their bank accounts several months prior to the incident. Mr. Laudermilk voluntarily removed his name from their joint checking and savings accounts. At that point, the couple had a combined $23,000 in the formerly joint accounts. Upon further questioning by the court, the victim stated that she paid the out-of-pocket portion of the medical bills solely from the checking account and that the medical bills were not addressed in the separation agreement. Hearing no objection from either the state, Mr. Laudermilk, or the victim, the court reviewed the separation agreement; however, it was not made a part of record and we cannot consider it on appeal.

{¶19} The court found that several of the bills relating to treatment of the injuries sustained in the incident ($209.66) were paid from marital funds. The court then ordered restitution for the remaining bills plus the $800 credit card payment for a total of $1,785.53 to be paid to the victim within 120 days.

{¶20} Mr. Laudermilk, pro se, raises six assignments of error on appeal:

{¶21} "[1.] The charge of criminal damaging (did knowingly cause or create a substantial risk of physical harm to property of [the victim] with her [sic] consent).

{¶22} "[2.] The court ordered restitution to be handled by adult probation dept. then court went against its own order and held a hearing.

{¶23} "[3.] Alleged victim [the victim] did not and would not cooperate with prosecutor, victim advocate, or adult probation dept.

{¶24} "[4.] [The victim] had already agreed to pay any credit card or any other debit [sic].

Case No. 2021-P-0054

{¶25} "[5.] Defence [sic] attorney Paul Siegferth did not put any effort into defending Robert Laudeilk [sic] by cross examining [the victim], other than asking very basic questions.

{¶26} "[6.] Robert Laudermilk is responsible for any and all funds in the accounts used to pay any and all co-pays, and medical bills."

{¶27} As noted, Mr. Laudermilk's brief fails in several respects. While he is proceeding pro se, "'pro se litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors.'" *Tally v. Patrick*, 11th Dist. Trumbull No. 2008-T-0072, 2009-Ohio-1831, ¶ 15, quoting *R.G. Slocum Plumbing v. Wilson*, 11th Dist. Ashtabula No. 2002-A-0091, 2003-Ohio-1394, ¶ 12.

{¶28} Per App.R. 16(A), "Brief of the appellant." "The appellant shall include in its brief, under the headings and in the order indicated, all of the following:

{¶29} "(1) A table of contents, with page references.

{¶30} "(2) A table of cases alphabetically arranged, statutes, and other authorities cited, with references to the pages of the brief where cited.

{¶31} "(3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected.

{¶32} "(4) A statement of the issues presented for review, with references to the assignments of error to which each issue relates.

{¶33} "(5) A statement of the case briefly describing the nature of the case, the course of proceedings, and the disposition in the court below.

7

{¶34} "(6) A statement of facts relevant to the assignments of error presented for review, with appropriate references to the record in accordance with division (D) of this rule.

{¶35} *"(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary."* (Emphasis added).

{¶36} An appellant "'bears the burden of affirmatively demonstrating error on appeal.'" *State v. Herron,* 11th Dist. Lake Nos. 2009-L-119, et al., 2010-Ohio-2050, ¶ 16, quoting *South Russell v. Upchurch*, 11th Dist. Geauga Nos. 2001-G-2395 & 2001-G-2396, 2003-Ohio-2099, ¶ 10; *see* App.R. 16(A)(7). "It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error. *Id.* Furthermore, if an argument exists that can support appellant's assignments of error, "it is not this court's duty to root it out." (Citation omitted.) *Id.* Accordingly, we may disregard an assignment of error that fails to comply with App.R. 16(A)(7).

{¶37} Nevertheless, this court will attempt to address Mr. Laudermilk's assignments of error despite his complete lack of legal authority or cohesive arguments.

### Criminal Damaging

{¶38} In his first assignment of error, Mr. Laudermilk contends he was charged with criminal damaging or endangering of property, not the victim's person.

{¶39} R.C. 2909.06, "criminal damaging or endangering," states, in relevant part, "(A) No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * *. (B) "Whoever violates this section is

8

guilty of criminal damaging or endangering, a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, criminal damaging or endangering is a misdemeanor of the first degree."

{¶40} Mr. Laudermilk was charged with criminal damaging, a second-degree misdemeanor, pursuant to a global plea agreement to resolve both domestic violence charges. He also agreed to pay restitution for the victim's physical harm that occurred on August 29, 2020. The court's pretrial report specifically noted, and the state, the defense, and the trial court discussed, restitution at the sentencing hearing, which was held on the same day. In addition, the trial court was clear that restitution only applied to the direct and proximate harm caused by this incident.

{¶41} As we noted in *State v. LaChance*, 11th Dist. Portage No. 2014-P-0026, 2015-Ohio-2609, "Ohio courts have upheld a trial court's order that a defendant pay restitution relating to dismissed charges where (1) the defendant entered a plea bargain in which he agreed to plead guilty to some charges contained in the indictment in exchange for the dismissal of others, and (2) the defendant agreed, as part of the plea bargain, to pay restitution to the victim for damages caused by his conduct for which criminal charges were dismissed under the plea bargain." *Id.* at ¶ 18.

{¶42} Because Mr. Laudermilk agreed to pay restitution as part of his plea agreement, he is barred from challenging restitution on appeal. *See State v. Swonger*, 5th Dist. Licking No. 19-CA-16, 2019-Ohio-4606, ¶ 37 (Since the restitution order was agreed to by the appellant and appellee, pursuant to R.C. 2953.08(D)(1), appellant was barred from challenging restitution on appeal).

{¶43} Mr. Laudermilk's first assignment of error is without merit.

9

**Restitution Hearing**

{¶44} In his second assignment of error, Mr. Laudermilk contends the trial court ordered the APD to determine restitution but then held a restitution hearing.

{¶45} As our review of the procedural facts indicates, the trial court postponed the restitution hearing to allow time for the APD to determine whether restitution should be imposed due to the marital status and health insurance coverage of Mr. Laudermilk and the victim, and it appropriately informed Mr. Laudermilk he was entitled to a restitution hearing if he objected to the amount. Prior to the start of the restitution hearing, the trial court gave Mr. Laudermilk medical bills that had been gathered by the APD, the victim advocate, and the victim. Mr. Laudermilk disputed the amount, and, accordingly, the court held a hearing.

{¶46} Mr. Laudermilk misconstrues the court's statements at his plea and sentencing hearing. The court was merely ordering APD to gather preliminary information so the court could determine if the victim suffered unreimbursed economic loss. It is the court that imposes restitution and determines the amount of restitution, not the APD. The APD, however, does handle payments of restitution should the court so direct.

{¶47} Thus, R.C. 2929.28(A)(1) provides a statutory mechanism for ordering restitution in misdemeanor cases, allowing *a court to impose* financial sanctions on a criminal offender that includes "restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss." *State v. Dent*, 11th Dist. Lake No. 2020-L-110, 2021-Ohio-2551, ¶ 16. The statute further states that "*restitution may be made to the victim in open court or to the adult probation department that serves the jurisdiction or the clerk of the court on behalf of the victim.*" (Emphasis added.) R.C.

2929.28(A)(1). The amount of restitution ordered cannot "exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." *Id.* Further, if the court decides to impose restitution, the court shall hold an evidentiary hearing on restitution if the offender, victim, or survivor disputes the amount of restitution. *Id.*

{¶48} Mr. Laudermilk's second assignment of error is without merit.

**Competent, Credible Evidence Supporting Restitution Order**

{¶49} We construe Mr. Laudermilk's third, fourth, and sixth assignments of error as challenging whether there is competent, credible evidence to support the court's restitution order. In his third assignment of error, Mr. Laudermilk appears to be attacking the credibility of the victim's testimony at the restitution hearing because she failed to submit any evidence of the cost of her injuries until the day of the hearing. In his fourth assignment of error, Mr. Laudermilk contends the victim agreed to pay her credit card debt in their "divorce decree." Lastly, in his sixth assignment of error, Mr. Laudermilk contends that the victim was already paying for the medical bills using marital funds.

{¶50} We review misdemeanor restitution orders for an abuse of discretion. *Dent* at ¶ 15. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). To the extent we are required to interpret and apply sections of the Ohio Revised Code, our review is de novo. *State v. Talameh*, 11th Dist. Portage No. 2011-P-0074, 2012-Ohio-4205, ¶ 20; *State v. Johnson*, 2d Dist. Montgomery No. 24288, 2012-Ohio-1230, ¶ 11 (We utilize a de novo standard of review when determining to whom restitution may appropriately be awarded).

11

Case No. 2021-P-0054

{¶51} "[T]he court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information * * *." R.C. 2929.28(A)(1). As we noted above, the court only needs to hold a hearing on restitution if the offender or victim disputes the amount. *Id.* However, the amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty. *State v. Johnson*, 4th Dist. Washington No. 03CA11, 2004-Ohio-2236, ¶ 10.

{¶52} A trial court abuses its discretion when it orders restitution in an amount that has not been determined to bear a reasonable relationship to the actual loss suffered as a result of the defendant's offense. *Id.* at ¶ 11. Additionally, a trial court exceeds its authority when it orders an offender to pay restitution to a victim without considering the offset of the victim's loss by an insurer. *Id.*; *see* R.C. 2929.28(A)(1).

{¶53} Our review of the restitution hearing reveals the record supports the court's restitution order. The trial court considered the victim's testimony, her medical bills, and her credit card statement. The trial court also considered the parties' separation agreement without any objection from Mr. Laudermilk or the state; however, it was not made a part of the court record, and we cannot consider it.

{¶54} The trial court found that payments made before the date of the filing for divorce were "most likely" paid by marital funds and deducted that amount from the restitution order. The trial court further found that the fact that the victim did not produce any medical bills until the hearing date is immaterial to a determination of her economic

12

loss and whether there was competent, credible evidence to support it, i.e., the medical bills and a credit card statement.

{¶55} Since the trial court's restitution order was supported by competent, credible evidence, the trial court did not err in awarding this amount. *State v. Spano*, 2016-Ohio-3120, 66 N.E.3d 10, ¶ 66 (11th Dist.).

{¶56} Mr. Laudermilk's third, fourth, and sixth assignments of error are without merit.

**Ineffective Assistance of Counsel**

{¶57} In his fifth assignment of error, Mr. Laudermilk contends his counsel was ineffective in his cross-examination of the victim at the restitution hearing.

{¶58} To establish a claim of ineffective assistance of counsel, an appellant must demonstrate that (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶59} A threshold issue in a claim of ineffective assistance of counsel is whether there was actual error on the part of appellant's trial counsel. *State v. McCaleb*, 11th Dist. Lake No. 2002-L-157, 2004-Ohio-5940, ¶ 92. In Ohio, every properly licensed attorney is presumed to be competent, and therefore a defendant bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "'Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.'" *State v. Iacona*, 93 Ohio St.3d 83, 105, 752 N.E.2d

13

937 (2001), quoting *State v. Bradley*, 42 Ohio St.3d 135, 142, 538 N.E.2d 373 (1989). Furthermore, decisions on strategy and trial tactics are generally granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze the trial counsel's legal tactics and maneuvers. *State v. Gau*, 11th Dist. Ashtabula No. 2005-A-0082, 2006-Ohio-6531, ¶ 35; *State v. Kouns*, 11th Dist. Portage No. 2011-P-0105, 2012-Ohio-5331, ¶ 34.

{¶60} Mr. Laudermilk failed to establish the threshold issue of whether defense counsel committed an error while cross-examining the victim at the restitution hearing. Simply because he does not approve of the questions defense counsel asked does not equate to a deficiency in counsel's performance. Even debatable trial tactics and strategies generally do not constitute ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

{¶61} Mr. Laudermilk's fifth assignment of error is without merit.

{¶62} The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.

THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.

14

Case No. 2021-P-0054